UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STALWART CAPITAL, LLC, | |
| Plaintiff, | Civ. No. 11-5249 (JLL) |
| v. | |
| WARREN STREET PARTNERS, LLC, | OPINION |
| Defendant. | |

**HAMMER, United States Magistrate Judge**

## I. INTRODUCTION

This matter comes before the Court on the motion of the defendant to dismiss for lack of personal jurisdiction and improper venue, pursuant to Fed. R. Civ. P. 12(b)(2) and (3), or in the alternative, to transfer venue. For the reasons herein, the Court finds that venue in this district is improper and will enter an order transferring this case to the United States District Court, Western District of Virginia.

## II. BACKGROUND

### A. Factual Background

This case concerns a breach of a contract to raise capital. Plaintiff Stalwart Capital, LLC, is a New Jersey corporation and a registered securities broker-dealer under FINRA and the SEC. (Compl. ¶ 1, 4; Evans Certif. ¶¶ 2–3, Dec. 7, 2011, ECF No. 12.) Defendant Warren Street Partners, LLC, is a Virginia corporation that sought to build a condominium complex in

1

Blacksburg, Virginia.  (Compl. ¶¶ 2, 5, Sept. 12, 2011, ECF No. 1; Kinser Certif. ¶¶ 2–3, Nov. 30, 2011, ECF No. 11.)

Warren Street solicited Stalwart Capital to raise capital for the condominium project in Blacksburg.  Warren Street solicited Stalwart Capital through a Google advertisement that indicated Stalwart Capital was located in New Jersey.  (Evans Certif. ¶¶ 4–5.)  The parties began negotiating a contract by e-mail and telephone.  (Kinser Certif. ¶ 6.)  The parties' communications went back and forth from their respective offices in New Jersey and Virginia.  (See id. ¶ 6; Evans Certif. ¶ 8.)  No Warren Street employee visited New Jersey to negotiate the contract.  (See Kinser Certif. ¶ 7.)  Stalwart Capital's principal, however, apparently visited Warren Street's office in Virginia.  (Id. ¶ 8.)[1]

In March 2010, the parties entered a contract whereby Stalwart Capital would raise capital for Warren Street's condominium project.  (Compl. ¶¶ 4–6.)  The means for raising capital allegedly included direct marketing as well as indirect marketing, such as introductions to investors through other broker-dealers.  (Id. ¶¶ 7–8.)  The contact contained a non-circumvention clause, whereby Warren Street agreed to pay Stalwart Capital if Warren Street accepted an investment from "[a]ny potential who Stalwart introduces by conference call, letter, e*mail, visit or *any other means*."  (Id. ¶ 9 (citing id. Ex. 1, § 4) (emphasis in Compl.)  The contract also stated that New Jersey law would govern any controversies arising from and related to performance.  (Id. Ex. 1, § 5 (the second section five).)

Stalwart Capital identified a potential source of investors, namely, a broker-dealer

---

[1] Stalwart Capital does not explicitly contest this assertion but states generally that it "negotiated and signed the contract between the parties and the amendment from [Stalwart Capital's] New Jersey office."  (Evans Certif. ¶ 8.)

2

conference in Scottsdale, Arizona, in mid-July 2010. (Id. ¶¶ 10–11, 14.) Warren Street approved the recommendation, and Stalwart Capital secured a spot at the July 2010 Scottsdale conference. (Id. ¶¶ 14–15, 17.) This conference was the "centerpiece" of Stalwart Capital's efforts. (Id. ¶ 18; see also id. ¶ 17.) Meanwhile, Stalwart Capital continued various efforts to market Warren Street's project or prepare it for presentation to potential investors. (Id. ¶ 18.) In April 2010, the parties amended their contract to provide Stalwart Capital more compensation at the close of any investment. (Id. ¶ 19, Ex. 1.)

At some point, Warren Street indicated that it needed an annual audit, and Stalwart Capital recommended a New Jersey accountant. (Evans Certif. ¶ 9.) An agent for Warren Street attended a conference in New York City for several days (Oliver Certif. ¶ 3, Jan. 10, 2012, ECF No. 15), and during this trip, Warren Street's agent and Stalwart Capital's principal jointly visited the recommended accountant in New Jersey. (Evans Certif. ¶ 10; Kinser Certif. ¶ 7; Oliver Certif. ¶ 2.)[2] Warren Street contracted with the recommended accountant but ultimately did not obtain an audit. (Pl.'s Letter, Jan. 17, 2012, ECF No. 16; Def.'s Letter, Jan. 25, 2012, ECF No. 17.)[3]

In mid-July 2010, the parties attended the Scottsdale conference. (See id. ¶¶ 21–22.) Several brokers-dealers indicated interest in joining "the selling group," who in turn might find

---

[2] Stalwart Capital asserts that Warren Street's agent attended this conference in New Jersey to raise funds. (Evans Certif. ¶ 9.) But while Stalwart Capital provides no basis for its personal knowledge on this issue, Warren Street's agent certifies that the conference took place in New York and provides hotel and travel receipts. (Oliver Certif. ¶ 3, Ex. A.)

[3] The parties presented this information to the Court in post-briefing letters. For the reasons explained below, the Undersigned considers this information in the interest of completeness. See infra note 4.

3

investors for Warren Street. (See id. ¶ 21.) One such broker-dealer allegedly approached Warren Street secretly and offered access to investors if Warren Street terminated the contract with Stalwart Capital. (Id. ¶ 22.) According to Warren Street, Stalwart Capital's representation at the conference was unsatisfactory. (Kinser Certif. ¶ 9.)

After returning to Virginia from the conference, Warren Street fired Stalwart Capital and hired another broker-dealer, based in Pennsylvania. (Kinser Certif. ¶¶ 9–10; see also Compl. ¶¶ 23–24.) Warren Street allegedly retained financing from investors introduced by Stalwart Capital at the Scottsdale Conference. (Compl. ¶ 27.)

### B. Procedural History

On September 12, 2011, Stalwart Capital filed a complaint against Warren Street alleging breach of contract in the United States District Court, District of New Jersey. (Compl., Sept. 12, 2011, ECF No. 1.) Stalwart Capital alleged that Warren Street failed to compensate Stalwart Capital after accepting investments from investors protected under the non-circumvention clause. (Compl. ¶¶ 28–30.) Stalwart Capital's jurisdictional basis is diversity jurisdiction under 28 U.S.C. § 1332. (Id. ¶ 3.)

Initially, Stalwart Capital improperly filed suit without an attorney in contravention of the rule that corporations cannot litigate pro se. (See Mot. to Dismiss, Oct. 11, 2011, ECF No. 5.) Motion practice followed but was resolved by stipulation and consent order. (See Def.'s Letter, Oct. 26, 2011, ECF No. 9). Under the stipulation and consent order, the Court terminated the motion to dismiss as withdrawn and extended Warren Street's time to file a new motion to dismiss. (Stipulation & Order, filed Oct. 28, 2011, ECF No. 10.)

On December 1, 2011, Warren Street filed the present motion to dismiss for lack of

personal jurisdiction and improper venue, or in the alternative, to transfer venue to the Western District of Virginia. (Mot. to Dismiss, Dec. 1, 2011, ECF No. 11.) On December 13, 2011, Stalwart Capital filed its opposition. (Pl.'s Opp'n Br., Dec. 13, 2011, ECF No. 12; Evans Certif., Dec. 7, 2011, ECF No. 12.) On January, 10, 2011, Warren Street filed its reply. (Def.'s Reply Br., Jan. 10, 2011, ECF No. 15; Oliver Certif., Jan. 10, 2012, ECF No. 15.) On January 17, 2012, Stalwart Capital filed a sur-reply rebutting a factual contention (Def.'s Letter, Jan. 17, 2012, ECF No. 16), and on January 25, 2012, Warren Street filed a sur sur-reply objecting that the sur-reply was filed without permission. (Pl.'s Letter, Jan. 25, 2012, ECF No. 17.)[4]

## III. DISCUSSION

### A. Personal Jurisdiction

Typically, a court considers personal jurisdiction before venue, but "a court may reverse the normal order" when justification exists for doing so. Leroy v. Great W. United Corp., 443 U.S. 173, 180 (1979). Courts in the Third Circuit have found such justification when the answer to the venue question "resolves" the case. Cumberland Truck Equip. Co. v. Detroit Diesel Corp., 401 F. Supp. 2d 415, 419 (E.D. Pa. 2005); see, e.g., J.F. Lomma, Inc. v. Stevenson Crane Servs., Inc., Civ. No. 10-3496, 2011 WL 463051, at *1 n.1 (D.N.J. Feb. 3, 2011); Lomanno v. Black, 285 F. Supp. 2d 637, 640 (E.D. Pa. 2003); Leech v. First Commodity Corp. of Boston, 553 F.

---

[4] Under Local Civil Rule 7.1(d)(6), "[n]o sur-replies are permitted without permission of the Judge or Magistrate Judge to whom the case is assigned." The Court need not consider a sur-reply filed without permission. See, e.g., In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II), Civ. No. 03-4558, 2010 WL 2813788, at *29 (D.N.J. July 9, 2010). Here, however, the sur-reply is narrow and merely clarifies a factual point first raised in the reply. And the sur sur-reply essentially agrees with this clarification. Because these additional submissions merely clarify the record, the Undersigned considers them in the interest of completeness. Christion v. Pressler & Pressler LLP, Civ. No. 07-1938, 2010 WL 988547, at *2 n.3 (D.N.J. Mar. 12, 2010).

5

Supp. 688, 689 (W.D. Pa. 1982). Because, as discussed below, venue in the district of New Jersey is improper and the case may be transferred to the Western District of Virginia, the Undersigned need not consider whether this Court has personal jurisdiction over Warren Street.

    **B.**    **Venue**

When examining motions for improper venue, the Court keeps several considerations in mind. First, in the Third Circuit, the burden to show improper venue is on the moving party. Bockman v. First Am. Marketing Corp., No. 11-2408, 2012 WL 171972, at *2 (3d Cir. Jan. 23, 2012) (citing Myers v. Am. Dental Ass'n, 695 F.2d 716, 724–25 (3d Cir. 1982)); see also Simon v. Ward, 80 F. Supp. 2d 464, 466–68 (E.D. Pa. 2000) (noting confusion on this point). Second, venue must be proper as to each claim. See, e.g., Cmty. Surgical Supply of Tom's River, Inc. v. Medline Diamed, LLC, Civ. No. 11-221, 2011 WL 3235706, at *3 (D.N.J. July 28, 2011). Third, on a Rule 12(b)(3) motion, a court must generally accept a complaint's allegations as true, unless contradicted by the defendant's affidavits, and a court may consider facts outside the complaint, but all reasonable inferences must be made in the plaintiff's favor. See Bockman, 2012 WL 171972, at *4 n.1; 5B Charles Allan Wright & Arthur R. Miller, Federal Practice & Procedure, § 1352 (3d ed. 2012).

Here, the Complaint does not state the basis for venue in the District of New Jersey, but does state that jurisdiction exists on the basis of diversity. (Compl. ¶ 3.) Under the law applicable when this action was filed, 28 U.S.C. § 1391(a) sets forth the proper venue for diversity cases as follows:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
>
> (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. 1391(a) (2006).[5] There are appears to be no dispute that subsections (a)(1) and (a)(3) do not apply. Subsection (a)(3) is inapplicable as this action could have been brought in Virginia because Warren Street is incorporated there and thus subject to personal jurisdiction there. Warren asserts that subsection (a)(1) is inapplicable "since [it] does not 'reside' in New Jersey."[6] (Def.'s Br. at 11.) Stalwart Capital does not refute this assertion but argues instead that "[v]enue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred in the State of New Jersey." (Pl.'s Opp'n Br. at 8.) Stalwart Capital's argument parallels subsection (a)(2) and does not assert that Warren Street "resides" in New Jersey as construed under 28 U.S.C. 1391(a). Moreover, the Complaint contains no explicit basis for venue. Accordingly, the Undersigned considers whether the District of New Jersey is an

---

[5] The Court acknowledges that recent revisions of 28 U.S.C. § 1391 were signed into law on December 7, 2011, namely, the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758 (2011). The Act, however, applies only to actions filed in federal court after a thirty-day period that began on December 7, 2011, or actions removed from state court to federal court on or after the effective date. As this case was filed in this Court before the effective date, the Undersigned applies the old language of 28 U.S.C. § 1391.

[6] Notably, neither party raises 28 U.S.C. 1391(c), which states in pertinent part that "[f]or purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. 1391(c) (2006). As Stalwart Capital makes no argument based on this section, it appears not to assert residence as a basis for venue.

appropriate venue under subsection (a)(2) for Stalwart Capital's breach of contract claim.

    **C.**    **28 U.S.C. § 1391(a)(2)**

As stated above, under 28 U.S.C. § 1391(a)(2), venue is appropriate in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. 1391(a)(2) (2006). The Court of Appeals for the Third Circuit has emphasized that events or omissions supporting a claim must be "substantial," and that events or omissions with only "some tangential connection with the dispute in litigation are not enough." Cottman Transmission Sys., Inc., v. Martino, 36 F.3d 291, 294 (3d Cir. 1994). The purpose of the substantiality requirement is to "preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." Id. at 294. To assess "whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute." Id. at 295. In this regard, the Undersigned notes that the test for personal jurisdiction is different than venue since "[t]he test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'" Id. at 294.

For breach of contract of claims, courts considering substantial events or omissions take into account where the contract was negotiated, executed, performed, and breached. See J.F. Lomma, 2011 WL 463051, at *4–5; CLP Packaging Solutions, Inc. v. Sports Pouch Beverage Co., Civ. No. 07-1532, 2008 WL 2095774, at *2–4 (D.N.J. May 16, 2008); see also Cottman, 36 F.3d at 295 (considering where contract on which plaintiff based its state-law claims was executed and performed and where defendant failed to return various materials and remit

8

payment).[7] In-person meetings can be substantial events, but electronic and telephonic negotiations between two districts do not necessarily create a substantial event. See, e.g., CLP, 2008 WL 2095774, at *3 (finding no venue in New Jersey where email and telephone negotiations occurred in New Jersey and Pennsylvania and face-to-face meetings occurred in California, Nevada and Florida). Where a party has a failed to make a payment, the locus of the action is where the party failed take that action rather than where the result is felt. See Cottman, 36 F.3d at 295; see, e.g., CLP, 2008 WL 2095774, at *4.

Here, Warren Street argues that the Complaint fails to allege that any events giving rise to the claim occurred in New Jersey. (Def.'s Br. at 11.) Warren Street views the negotiation, execution, and performance of the contract to focus on Virginia because that the location from

---

[7] Some courts in this district have used injury as a factor when determining where a substantial part of the events or omissions giving rise to the claim occurred. See, e.g., Tischio v. Bontex, Inc., 16 F. Supp. 2d 511, 516 (D.N.J. 1998) (citing Eason v. Linden Avionics, Inc., 706 F. Supp. 311, 329 (D.N.J. 1989)). But this factor ultimately comes from case law outside this circuit, before the Third Circuit's Cottman decision, and before the 1990 amendment to 28 U.S.C. 1391. See Umoe Schat Harding, Inc. v. N.Y. Marine & Gen. Ins. Co., Civ. No. 10-3722, 2011 WL 1211462, at *4 n.1 (D.N.J. Mar. 29, 2011); Eason, 706 F. Supp. at 329 (citing Hodson v. A.H. Robins Co., 528 F. Supp. 809, 813 (D. Va.1981)). To the extent that injury is still a factor, it may have been subsumed into the general analysis of whether a substantial part of the events or omissions occurred in the venue. See Umoe, 2011 WL 1211462, at *4 n.1. When it comes to contract issues, however, the Cottman decision appears to focus on acts or omissions, not injury. See Cottman, 36 F.3d at 295 ("The omissions that Cottman cites—Martino's failure to return various materials and failure to remit payments—actually occurred in Michigan, not in Pennsylvania. Even though the result was Cottman's non-receipt of those items in Pennsylvania, the omissions bringing about this result actually occurred in Michigan.").

Neither party argues injury as factor for determining a substantial part of the events or omissions giving rise to the claim. And on this record, injury in New Jersey would be insufficient for venue to be proper given that a combination of injury and intrastate communication is not enough to create proper venue. See, e.g., Bolus v. Morrison Homes, Inc., Civ. No. 07-1978, 2008 WL 4452658, at *3–4 (E.D. Pa. Sept. 30, 2008); CLP, 2008 WL 2095774, at *3–4; TJF Assocs., LLC v. Rotman, Civ. No. 05-705, 2005 WL 1458753, at *7–8 (E.D. Pa. 2005); Loeb v. Bank of Am., 254 F. Supp. 2d 581, 587 (E.D. Pa. 2003).

9

which Warren Street's agent communicated during negotiations, where its agent signed the contract, and where the condominium was to be built. (Id. at 11; Kinser Certif. ¶¶ 3, 6.)[8] Warren Street further contends that the breach occurred in Virginia because that is where it fired Stalwart Capital and hired someone else. (Def.'s Br. at 12; Kinser Certif. ¶¶ 9–10.) Warren Street also mentions as support that Virginia is where it is a resident, where it conducts its substantial business, and where its documents and witnesses are located. (Def.'s Br. at 12; Kinser Certif. ¶¶ 2, 4–5, 11.)

In opposition, Stalwart Capital views the negotiation as taking place in both New Jersey and Virginia, but asserts that the substantial events occurred in New Jersey. (Pl.'s Opp'n Br. at 8; see Evans Certif. ¶ 8.) Specifically, Stalwart Capital asserts that Warren Street sought out Stalwart in New Jersey and that Stalwart's principal signed the contract in New Jersey. (Pl.'s Opp'n Br. at 8; Evans Certif. ¶¶ 4–8.) Stalwart Capital also asserts that it performed all the work under the contract in New Jersey (Pl.'s Opp'n at 8), but provides no record evidence of this assertion.[9]

As to negotiation and execution, the evidence demonstrates that it mostly occurred by telephone and email in both New Jersey and Virginia. (Kinser Certif. ¶¶ 6–7; Evans Certif. ¶¶

---

[8] In its reply brief, Warren Street asserts more expansively that "much of the work was performed in either Virginia or Arizona, not in Jersey." (Def.'s Reply Br. at 7.) Warren Street, however, fails to cite to a basis in the record for this assertion. The Kinser Certification and the Complaint, however, agree that the parties traveled to Scottsdale, Arizona in July 2010 as part of Stalwart Capital's representation. (See Kinser Certif. ¶ 9; Compl. ¶¶ 21–22.)

[9] Stalwart Capital also contends that its agreement with Warren Street included a New Jersey choice-of-law provision. Just as a choice-of-law provision does not, by itself, confer personal jurisdiction, it also does not establish that substantial events occurred in New Jersey. Cf. Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 65 (3d Cir. 1984)

10

7–8; see also Pl.'s Opp'n Br. at 8.) But such electronic and telephonic negotiations do not necessarily create a substantial event, CLP, 2008 WL 2095774, at *3, and the only in-person negotiation apparently took place in Virginia (Kinser Certif. ¶ 8), an allegation that Stalwart Capital does not rebut.

As to performance, the record is not entirely clear. Warren Street cannot be correct when it asserts that performance occurred in Virginia because that it is the location of the condominium project. Warren Street did not hire Stalwart Capital to construct the condominium project but to find investors to pay for it. (See Compl. Ex. 1; Kinser Certif. ¶ 6.) Similarly, Stalwart Capital cannot be correct when it argues, without citation to evidence, that it "performed all work relating to [its] obligations in New Jersey, prior to the breach." (Pl.'s Opp'n Br. at 8.) After all, Stalwart Capital alleges that the "centerpiece" of its efforts to obtain investors was the July 2010 conference in Scottsdale, Arizona. (See Compl. ¶ 18; see also id. ¶¶ 17, 21–22.) Moreover, the Complaint, the exhibits attached to the Complaint, and the certification opposing this motion do not assert where else Stalwart Capital performed the contract. Thus, the record before the Undersigned shows that performance definitely occurred in Arizona and that some may have also taken place in New Jersey.[10]

---

[10] The record is unclear as to the parties' joint visit to New Jersey. Both parties appear to agree that Warren Street sought an auditor and that Stalwart Capital recommended one. (Kinser Certif. ¶¶ 7; Evans Certif. ¶ 9; see also Def.'s Letter at 1, Jan. 25, 2012.) Yet Warren Street asserts that the purpose of this visit was to potentially hire an auditor (Kinser Certif. ¶ 7; Oliver Certif. ¶ 2), whereas Stalwart Capital asserts, inconsistently, that it was "an effort to get the aforementioned CPA firm to provide investors for our joint venture." (Evans Certif. ¶ 10.)

But what remains unclear is the extent to which this visit was part of Stalwart Capital's services. An effort to get investors would be part of Stalwart Capital's services. But the record is unclear as to how the audit fits into the capital raising contract and whether the recommendation was part of Stalwart Capital's services. On the one hand, Stalwart Capital

11

Breach, however, is the core of this dispute and clearly occurred in Virginia. Stalwart Capital's claim is about Warren Street's failure to pay its due. For venue purposes, this occurred where Warren Street acted or failed to act. See Cottman, 36 F.3d at 295–96; Days Inn Worldwide, Inc. v. Ram Lodging, LLC, Civ. No. 09-2275, 2010 WL 1540926, at *4 (D.N.J. Apr. 14, 2010) (find that substantial acts or omissions occurred where defendant failed to remit payment and breached obligations); CLP, 2008 WL 2095774, at *3. Warren Street acted or failed to act in Virginia. (Kinser Certif. ¶¶ 9–10.)

Lastly, the Undersigned notes that the parties' briefs incorporate language and assertions related to personal jurisdiction. (See Def.'s Br. at 11–12; Pl.'s Opp'n Br. at 8; Def.'s Reply Br. at 7.) But as the Court of Appeals for the Third Circuit has noted, the test for personal jurisdiction is different than venue since "[t]he test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'" Bockman, 2012 WL 171972, at *3 (quoting Cottman, 36 F.3d at 294) (internal quotation marks omitted); see, e.g., Taube, 2011 WL 5599821, at *4 (noting confusion between "jurisdictional facts potentially sufficient to confer personal jurisdiction over a

---

states without detail that its efforts included "introductions to CPA's." (Compl. ¶ 18.) On the other hand, Warren Street's sur sur-reply indicates that an audit was never needed because no capital was ever raised, thereby indicating that an audit is an event subsequent to raising capital. (Def.'s Letter at 1, Jan. 25, 2012.) Stalwart Capital's sur-reply inadvertently supports Warren Street's version of this visit, to the extent that the attached exhibit of is a contract for an audit between the accountant and Warren Street. (See Pl.'s Letter, Jan. 17, 2012.) On the face of this contract, it does not appear to be related to Stalwart Capital's contract or an effort to obtain investors from the accountant.

But more importantly than the dispute over the purpose of this joint visit, other representations pin the locus of performance in Scottsdale, Arizona, while the core of this claim — Warren Street's alleged failure to pay — occurred in Virginia.

12

defendant with the proper venue of a civil action").

Accordingly, the record before the Court demonstrates that the substantial events of the breach of contract did not occur in the District of New Jersey, and thus venue in New Jersey is not proper under Section 1391(b)(2).

**C. Transfer**

Because venue in New Jersey is improper, the Court may dismiss or transfer this case. Section 1406(a) of Title 28 of the United States Code states "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." See Goldlawr, 369 U.S. at 466 (stating that under Section 1406, a court does not need to have personal jurisdiction to transfer a case for improper venue); United States v. Berkowitz, 328 F.2d 358, 361 (3d Cir. 1964) ("'The language of § 1406(a) is amply broad enough to authorize the transfer of cases . . . whether the court in which it was filed had personal jurisdiction over the defendants or not.") (quoting Goldawr, 369 U.S. at 466-67)). Transfer is generally preferred over dismissal under the principle that cases should be tried on their merits. RAIT Partnership, L.P. v. Fieldstone Lester Shear & Denberg, LLP, Civ. No. 09-28, 2009 WL 3297310, at 8 (D. Del. Oct. 14, 2009) (citing Goldlawr, 369 U.S. at 465–66); see, e.g., Taube, 2011 WL 5599821, at *5; J.F. Lomma, 2011 WL 463051, at *5; CLP, 2008 WL 2095774, at *4. Indeed, Stalwart Capital has requested that the Court consider transfer rather than outright dismissal. (See Pl.'s Opp'n Br. at 8.) Accordingly, the Undersigned will consider transfer.

The Undersigned finds that venue would be proper under either 28 U.S.C. § 1391(a)(1) or (a)(2) in the United States District Court, Western District of Virginia. Under Section

13

1391(a)(1), venue is proper in "a judicial district where any defendant resides, if all defendants reside in the same State." 28 U.S.C. § 1391(a)(1) (2006).[11]  Here, Warren Street is the sole defendant, is incorporated in Virginia, and has a principal place of business in Radford, Virginia. (Kinser Certif. ¶ 2.)  Undoubtedly, personal jurisdiction exists over Warren Street in Virginia, and thus Warren Street "resides" there under 28 U.S.C. § 1391(c).  And no party disputes that Radford, Virginia, is in the Western District of Virgina.  (See Pl.'s Opp'n Br. at 8.)  Accordingly, venue in the Western District of Virginia is proper under Section 1391(a)(1) because the sole defendant resides or is deemed to reside there.

Under Section 1391(a)(2), venue in the Western District of Virginia is also proper since many of the substantial events and omissions of Warren Street's alleged breach of contract transpired in its Radford, Virginia, office.  As discussed above, it was in Virginia that Warren Street terminated Stalwart Capital, hired another broker-dealer, and failed to remit payment allegedly due to Stalwart Capital.  (See Kinser Certif. ¶¶ 9–10.)  Consequently, the events giving rise to the claim substantially occurred in the Western District of Virginia.  See Cottman, 36 F.3d at 295–96.  Accordingly, venue in the United States District Court, Western District of Virginia is also proper under 28 U.S.C. § 1391(a)(2).

Because transfer to the Western District of Virginia is proper and will facilitate a decision on the merits, the Court concludes that this case should be transferred to the United States District Court, Western District of Virginia pursuant to 28 U.S.C. § 1406.

---

[11] As noted above, the Undersigned considers the pre-amendment version of 28 U.S.C. § 1391.  See supra note 5.

## IV. CONCLUSION

For the reasons above, the Undersigned finds that venue in the District of New Jersey is improper, but that transfer to the United States District Court, Western District of Virginia pursuant to 28 U.S.C. § 1406 is appropriate. Therefore, the Court will deny as moot the motions to dismiss for improper venue and for lack of personal jurisdiction, and transfer the action to the United States District Court, Western District of Virginia.

An appropriate Order accompanies this Opinion.

*s/Michael A. Hammer*
UNITED STATES MAGISTRATE JUDGE

Date: April 30, 2012.